# 24-1653

## United States Court of Appeals
## for the Second Circuit

⊷⊷⊷◉◉◉⊶⊶⊶

IN RE: PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION,

THIS DOCUMENT REFERS TO:
ALL RULE 23(B)(3) CLASS ACTIONS:
BLOCK, INC. V. VISA INC., NO. 23-CV-5377;
LANNING V. VISA INC., NO. 21-CV-2360;
CAMP GROUNDS COFFEE, LLC V. VISA, INC., NO. 21-CV-3401;
INTUIT, INC. V. VISA INC., NO. 21-CV-1175

_____

803 KAVA LLC, CRYOSERVICES, INC. D/B/A ANDERSONVILLE CRYOTHERAPY D/B/A ATHLETIC RECOVERY CENTER; DELL FOX JEWELRY LLC; MAUREEN ROXBERRY; HAYLEY LANNING; SBG DESIGNS, LLC D/B/A GOLDFINE JEWELRY; SHEN SHU ACUPUNCTURE, PLLC; CAMP GROUNDS COFFEE, LLC,

*Plaintiffs-Appellants,*

BLOCK, INC.,

*Plaintiff,*

-against-

JACK RABBIT, LLC,

*Objector-Appellant,*

-against-

VISA, INC., MASTERCARD INCORPORATION,

*Defendants-Appellees.*

*On appeal from an Order of the U.S.*
*District Court for the Eastern District of New York*

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue, 10th Floor
New York, New York 10016
(212) 545-4762
*Attorneys for Plaintiffs-Appellants*
Mark C. Rifkin, Esq.
Thomas H. Burt, Esq.

## <u>TABLE OF CONTENTS</u>

**<u>Page(s)</u>**

TABLE OF CITATIONS ................................................................ ii

INTRODUCTION ...................................................................... 1

ARGUMENT ........................................................................... 4

    A.    As a Question of Contract Interpretation, Membership in the Settlement Class is Limited by Direct Purchaser Standing ............................................. 5

    B.    The May 28 Order Substitutes a New Contract Definition For The One Set By This Court in *Fikes* ................................................................. 8

    C.    The May 28 Order Does Not Clarify the Ambiguous Class Definition .......................................................................... 10

    D.    *Fikes* Interpreted the Class Definition in Accordance with Defendants' Own Stated Intent ................................................................. 12

    E.    The Acquiring Banks, Which Perform Only Mechanical Services for Merchants, Are Not Direct Purchasers of Card Transaction Services .......................................................................... 15

    F.    Published Notice Did Not Satisfy the Due Process Requirement Of Direct Notice to All Settlement Class Members ........................................ 16

        1.    Black Letter Law Requires Direct Notice .......................... 16

        2.    The Settling Parties Never Considered the Square Sellers To Be Class Members ................................................... 21

CONCLUSION ........................................................................ 21

# TABLE OF CITATIONS

**CASES**                                                    **Page(s)**

*Amchem Products v. Windsor,*
  521 U.S. 591 (1997)..................................................................9

*Apple Inc. v. Pepper*,
  587 U.S. 273 (2019)................................................................16

*Carter v. HealthPort Techs., LLC,*
  822 F.3d 47 (2d Cir. 2016) ......................................................7

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019) ..............................................7

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006) ................................................7, 9

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974)......................................................3, 17, 18

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
  62 F.4th 704 (2d Cir. 2023) ...........................................*passim*

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)........................................................*passim*

*Johannessohn v. Polaris Indus. Inc.,*
  9 F.4th 981 (8th Cir. 2021) .....................................................7

*Larson v. AT&T Mobility LLC*,
  687 F.3d 109 (3d Cir. 2012) .............................................18, 19

*Larson v. Spring Nextel Corp.*,
  No. 07-5325 (JLL), 2009 WL 1228443 (D.N.J. Apr. 30, 2009)....................................18

*Oppenheimer Fund, Inc. v. Sanders,*
  437 U.S. 340 (1978)................................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016) ...............................................9-10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   No. 05-MD-1720 (MKB), 2024 WL 1014159 (E.D.N.Y. Mar. 8, 2024) ......................11

*Romberio v. UnumProvident Corp.*,
   385 F. App'x 423 (6th Cir. 2009) ....................................................................7

*Salveson v. JP Morgan Chase & Co.*,
   663 F. App'x 71 (2d Cir. 2016) ......................................................................6

*Simon v. KeySpan Corp.*,
   694 F.3d 196 (2d Cir. 2012) ...........................................................................6

*Virginia House of Delegates v. Bethune-Hill*,
   587 U.S. 658 (2019).........................................................................................7

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012) .....................................................................8

## STATUTES & RULES

Federal Rules of Civil Procedure
   Rule 23.............................................................................................2, 9, 10, 17
   Rule 23(a) .......................................................................................................7
   Rule 23(b) ..............................................................................................1, 5, 14
   Rule 23(b)(3)...........................................................................................*passim*

Sherman Act, 15 U.S.C. §§ 1 *et seq.* ....................................................*passim*

## OTHER AUTHORITIES

3 H. Newberg & W. Rubinstein, *Newberg & Rubinstein on Class Actions*
   § 8:8 (6th ed. Nov. 2024) ..............................................................................17

7AA C. Wright & A. Miller, *Federal Practice & Procedure*
   § 1786 (3d ed. June 2024) .............................................................................17

## INTRODUCTION

In *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023), this Court held that the Rule 23(b) Settlement Class may include only the direct payors of the challenged interchange fees. As the Court stated, consistent with the direct purchaser standing requirement under the Sherman Act, "the *only* entities that *could* fall within the [Rule 23(b)] class definition were those deemed to be *direct payors* of the challenged fees." *Id*. at 716 (emphases added). This Court established that rule of construction after considering the settling parties' own explanation of their intent.

Notwithstanding the direction from this Court, the District Court's May 28 Order ignored the Court's clear interpretation of the settlement agreement, substituting a new rule of construction and interpreting the class definition without reference to direct purchaser standing. Defendants/Appellees Visa, Inc. ("Visa") and Mastercard Incorporated ("Mastercard") defend the May 28 Order by arguing that the holding in *Fikes* only applies to franchisors and franchisee where two merchants disagree over which of them accepted a card for any given transaction.[1] But nothing

---

[1] Defendants' attempt to distinguish *Fikes* incorrectly assumes both that (i) the settlement was limited to "merchants," and (ii) Square is not a "merchant." The undisputed evidence in the record firmly establishes the contrary. *See* 05-md-1720 (E.D.N.Y.) ECF No. 9066 (Block Opp'n and Joinder Br.) at 3-4, 13-20 (quoting settlement documents establishing that agreement was *not* limited to "merchants" and collecting myriad evidence that Square was a "merchant" under contracts, network rules, and sworn testimony).

about the Court's interpretation of "accepted" in *Fikes* – and nothing about Sherman Act direct purchaser standing – was so limited. Because direct purchaser standing is mandatory for all Sherman Act claimants, *Fikes* held that this well-established principle of federal antitrust law informs the meaning of "accepted" in the settlement agreement and the settlement class here could not include the Square Sellers, who are *concededly* indirect purchasers.

*First*, Defendants' new argument conflicts with the position they took in *Fikes* – a binding admission as to their intent – that membership in the settlement class is defined by reference to substantive antitrust law. *Second*, their new argument conflicts with the Court's holding in *Fikes*. Agreeing with the parties' stated intent, this Court already interpreted the settlement agreement, and with it, membership in the class. And *third*, the District Court's new interpretation of class membership puts indirect purchasers with no federal standing in the same class as direct purchasers with standing to bring federal claims, which is not permissible.

This settlement is not merely an agreement between private parties; it also releases claims of millions of absent class members. Under Rule 23, the Court's duty to protect absent class members precludes Defendants' attempt to shoehorn indirect purchasers into the settlement. When the District Court substituted a new and different class definition based on a changed interpretation of the word "accepted," it committed error requiring reversal.

2

In addition, Visa and Mastercard conspicuously fail to explain in their answering brief why the settling parties did not send individual direct notice to the Square Sellers, whom they now say are members of the settlement class. They do not even attempt to do so, instead relying on the published summary notice despite the ambiguous settlement class definition.

The failure to send notice to the Square Sellers is striking because individual notice of a proposed class action settlement is constitutionally mandatory where the class members are, like here, identifiable based on transaction data. It has been settled for more than 50 years that individual notice *must* be sent directly to all absent class members whose identities are known or can be reasonably ascertained. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Defendants concede that the settling parties knew the identities of the Square Sellers; indeed, they were able to send claim forms to the Square Sellers after this dispute arose. They never assert that the Square Sellers' contact information was unknown or could not have been ascertained through reasonable means. However, unlike the members of the Rule 23(b)(3) Settlement Class, the Square Sellers were *not* given individual notice, and thus were *not* given their constitutional right to object or an opportunity to exclude themselves from the settlement class.

If the Court accepts Defendants' argument that the Square Sellers are members of the Rule 23(b)(3) Settlement Class – which it should not do – it

necessarily follows that the notice plan was constitutionally defective. Fortunately, that conclusion follows from a faulty premise. The settlement can be saved if the Court simply follows its prior decision in *Fikes* that the Rule 23(b) Settlement Class may include *only* the *direct* payors of the challenged interchange fees. Following *Fikes* also means rejecting Defendants' argument that the Square Sellers, who are *indirect* purchasers of payment card transaction services, are nonetheless settlement class members.

As the holding in *Fikes* makes clear, indirect purchasers were never intended to be in the settlement class. The District Court's determination that admittedly indirect payors should be bound by a settlement related to fees everyone agrees the Square Sellers never paid cannot be reconciled with this Court's decision in *Fikes*.

## ARGUMENT

The Square Sellers are not members of the settlement class of direct purchasers certified in this action. For that reason, they commenced their own *indirect* purchaser action under state statutes that, unlike the Sherman Act, allow for claims by indirect purchasers. Until the District Court's opinion below, the Square Sellers had no reason to suspect they were included in the settlement of this *direct* purchaser action. Indeed, Defendants themselves conceded below that the Square Sellers are *indirect* purchasers. *See* 05-md-1720, ECF No. 9103 (Defs.' Jan. 8, 2024 Reply in Supp. of Mot. to Enforce) at 21 ("Opposing Parties spill much ink arguing

that the [Square Sellers] are indirect purchasers. *Defendants agree*.") (emphasis added).

Defendants now argue that the Square Sellers' status as indirect purchasers is irrelevant. For the reasons explained below, that argument is mistaken. The Square Sellers are not and cannot be members of the settlement class. Defendants' arguments do not change this conclusion.

### A. As a Question of Contract Interpretation, Membership in the Settlement Class is Limited by Direct Purchaser Standing

In *Fikes*, the Court made it clear that under federal antitrust law, "the *only* entities that *could* fall within the [Rule 23(b)] class definition were those deemed to be direct payors of the challenged fees." 62 F.4th at 716 (emphasis added). In an effort to sidestep the Court's holding in *Fikes*, Visa and Mastercard now argue that direct purchaser standing is totally irrelevant to class membership. Defs. Br. at 18-24. Their argument cannot be reconciled with *Fikes*.

As an initial matter, to the extent this appeal raises a question of contract interpretation, *Fikes* presented and decided the same question. The parties in *Fikes* each claimed to be members of the settlement class. Their dispute "hinge[d] on the interpretation of a single word [in the settlement agreement]: 'accepted.'" 62 F.4th at 715. Finding the word ambiguous, the Court said resolving the ambiguity over who "accepted" payment cards must be "objectively guided by federal antitrust" law. *Id.* at 716. The Court explained that "a class definition is interpreted according to the

substantive law that provides the basis for the class action." *Id*. (quoting *In re Motorola Sec. Litig*., 644 F.3d 511, 517 (7th Cir. 2011)). Thus, the Court held that under federal antitrust law, "the *only* entities that could fall within the class definition were those deemed to be *direct payors* of the challenged fees." *Id*. (emphases added).

In interpreting the settlement agreement, the Court noted that counsel for the settlement class claimed to represent only "the *direct* purchaser[s]" of the card transaction services. *Fikes*, 62 F.4th at 716 (emphasis added). That, in part, led the Court to resolve the "ambiguity" in the class definition as it did. *Id*. By Defendants' own admission, the Square Sellers are *indirect* purchasers. *See* 05-md-1720, ECF No. 9103 (Defs.' Jan. 8, 2024, Reply in Supp. of Mot. to Enforce) at 21. As such, they were not represented by class counsel when the settlement was negotiated and presented for approval.

The Sherman Act strictly prohibits indirect purchasers from asserting claims for money damages. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977); *Salveson v. JP Morgan Chase & Co.*, 663 F. App'x 71, 74 (2d Cir. 2016); *Simon v. KeySpan Corp*., 694 F.3d 196, 201 (2d Cir. 2012). Thus, this Court followed well-established precedent when it interpreted the settlement class definition to include only those entities who directly purchased the card transaction services and directly paid the disputed interchange fees. *Fikes*, 62 F.4th at 716.

In addition, the Court's holding in *Fikes* is consistent with and gives effect to

6

the rule that standing is mandatory and not waivable by the parties. *See Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 658 (2019) ("as a jurisdictional requirement, standing cannot be waived or forfeited"); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (standing cannot be waived).

The Square Sellers comprise a substantial portion of the settlement class as re-defined by the District Court's May 28 Order. However, under the Court's holding in *Fikes*, the class could not be certified if nearly half of its members were *admittedly indirect* purchasers of the disputed card transaction services and never directly paid the disputed interchange fees. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006); *see also Johannessohn v. Polaris Indus. Inc*., 9 F.4th 981, 988 (8th Cir. 2021); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019).

Visa and Mastercard cite no case permitting direct purchasers and indirect purchasers to proceed together in the same class seeking damages under Rule 23(b)(3); Plaintiffs are not aware of one. At a minimum, attempting to belatedly include indirect purchasers in a settlement class of direct purchasers (as the May 28 Order did) would raise issues with the typicality requirement of Rule 23(a). *See Romberio v. UnumProvident* Corp., 385 F. App'x 423, 431 (6th Cir. 2009) ("[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class" (quoting *Sprague v. General Motors Corp.*,

133 F.3d 388, 399 (6th Cir. 1998))); *see also In re Vitamin C Antitrust Litigation*, 279 F.R.D. 90 (E.D.N.Y. 2012) (indirect purchaser unsuitable class representative for direct purchaser class because indirect claim was atypical of direct purchaser class's claims). As indirect purchasers, the Square Sellers lack standing to assert the Sherman Act claims as the named plaintiffs (who are direct purchasers) did. Their claims are not the same claims.

Defendants' argument that the District Court's decision is defensible as an interpretation of contract ignores this Court's interpretation of the settlement agreement in *Fikes* and the impact of direct purchaser standing on the class definition, and it conflicts with the law in this Circuit (including the *Fikes* decision) and elsewhere. Contrary to Visa's and Mastercard's argument, the settling parties could not define the Rule 23(b)(3) Settlement Class where nearly half the class members lacked direct purchaser standing.

### B. The May 28 Order Substitutes a New Contract Definition For The One Set By This Court in *Fikes*

Even treating the class definition in the settlement agreement as a question of contract interpretation, the matter was resolved by *Fikes* when this Court interpreted the ambiguous term "accepts" by referring to *Illinois Brick* direct purchaser standing. The District Court was not free to ignore that interpretation or allow Defendants to offer a different interpretation of the settlement agreement than the one they told this Court during the *Fikes* appeal. The District Court erred by holding that settlement

8

class membership need not be limited to direct purchasers.

In *Fikes*, Defendants and counsel for the Rule 23(b)(3) Settlement Class told the District Court and this Court that they intended to settle for *direct* purchasers. The Court agreed that *only direct purchasers* could be in the settlement class, and resolved the ambiguous settlement class definition accordingly. 62 F.4th at 716 ("the *only* entities that could fall within the class definition were those deemed to be *direct payors* of the challenged fees") (emphases added).

Now, however, Defendants say that direct purchaser standing is meaningless because they intended to settle not with direct purchasers – as they said before – but rather with merchants who took payment cards from their customers. This is a fundamental change that runs afoul of the holding in *Fikes* and with a half-century of Supreme Court precedent.

Because this is a class action, the parties were not free to settle as they chose. Procedural rules and due process requirements had to be met. A settlement class must satisfy the requirements of Rule 23 and due process. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Denney*, 443 F.3d at 270 (applying Rule 23 requirements to settlement class). Indeed, in an earlier appeal in this case, the Court rejected on Rule 23 and due process grounds an overbroad settlement class including class members who sought money damages and those who sought injunctive relief. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 827 F.3d 223,

234 (2d Cir. 2016). The Court recognized the inherent conflicts between those two kinds of claimants, just as there are inherent conflicts between direct and indirect purchasers. That is what made the word "accepted" ambiguous. But for the need for a class action settlement to comply with Rule 23, the word "accepted" could have been interpreted to mean something different. However, in a class action settlement, where millions of absent class members will be bound by a release, the meaning of "accepted" had to be circumscribed by *Illinois Brick* direct purchaser standing.

The parties here agree that the Square Sellers are indirect purchasers. *See* 05-md-1720, ECF No. 9103 (Defs.' Jan. 8, 2024 Reply in Supp. of Mot. to Enforce) at 21 ("Opposing Parties spill much ink arguing that the [Square Sellers] are indirect purchasers. Defendants agree."). After *Fikes*, Defendants' new argument is that direct purchaser standing does not matter. Defendants now say they did not intend to settle with purchasers – whom, they say, are the acquiring banks. Rather, they say they intended to settle with "merchants" who took payment cards, though the word "merchant" is absent from the Settlement Class definition in the Settlement Agreement. (A.7577-78 at ¶ 4). The District Court agreed.

### C. The May 28 Order Does Not Clarify the Ambiguous Class Definition

In *Fikes*, this Court clarified that class membership depends on direct purchaser standing. 62 F.4th at 716. To resolve the ambiguity in the class definition the District Court instead treated Square as a non-entity. It did so by emphasizing

10

the physical act of taking cards rather than the merchants' direct purchaser standing. Ignoring Square in that manner conflicts with the facts. The District Court's revised definition of who "accepts" payment cards is inconsistent with Visa's and Mastercard's own service agreements.

For example, Mastercard's service agreement provides that Payment Facilitators, like Square, are █████████████████████████████████ ███████████████████████████████████████ It then identifies the Payment Facilitators as the parties that ████████████████████████ ███████████████████████████████████████████ Visa's service agreement is not materially different. It, too, makes Payment Facilitators the ████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████

In the District Court's analysis, the merchant initiates payment card transactions through its acquiring bank. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., No. 05-MD-1720 (MKB), 2024 WL 1014159, at *16 (E.D.N.Y. Mar. 8, 2024). ███████████████████████████████ The District Court recognized that acquiring banks send net funds to the merchants after

11

deducting the challenged interchange fees for the card transactions. *Id*. Again, as the

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ And as the recipient of those net funds, ████████████████

████████████████████████████████████████████

Even under the erroneous standard that the District Court applied post-*Fikes*,

Plaintiff still should prevail.

### D. *Fikes* Interpreted the Class Definition in Accordance with Defendants' Own Stated Intent

Even if the settling parties could waive standing in a class action settlement –

which they cannot – Visa's and Mastercard's contract argument still fails because

the settling parties already told this Court what they intended the settlement

agreement and the class definition to mean when they defended the settlement in

*Fikes*. At the time, they said class membership is defined by substantive federal

antitrust law. More importantly, the Court is a party to this contract because one side

is a Rule 23(b)(3) settlement class. This Court decided that the Settlement

Agreement (including the class definition) meant what the parties said it meant when

they sought and obtained judicial approval of the class action settlement.

Unlike their argument in this appeal, when they successfully urged the District

Court and this Court to approve the classwide settlement, Visa and Mastercard said

forcefully that "[s]ettled law makes clear that *a class definition* must be read against

CRITICAL

the background of federal law – in this case the familiar rule . . . that indirect payors" lack federal antitrust standing (emphasis added). Def. *Fikes* Br., Case No. 20-339, ECF No. 334 at p. 23. Defendants were categorical. They did not say before (as they argue now) that federal law was relevant only to resolve disputes between merchants who claim to own the same claims. To the contrary, Visa and Mastercard were expressly broad: "*as a general rule*, a class definition is interpreted according to the substantive law that provides a basis for the class action." *Id.* at 30 (citations omitted and emphasis added). They emphasized that "federal antitrust law informs the meaning of the class definition" because "[t]he complaint sought relief for violations of [the Sherman and Clayton Acts]." *Id.* at 30. And they re-emphasized that "[t]he class definition thus *must be interpreted* in light of the rule that indirect payors of an alleged overcharge generally cannot sue for antitrust damages under federal law." *Id.* at. 31 (emphasis added). Defendants then chided the gas station franchisees for rejecting "the straightforward conclusion that the class definition *must be read in light of federal antitrust law*." *Id.* at 32 (emphasis added). Finally, they insisted that the word "accepts" is not ambiguous "when the class definition is properly read against the backdrop of federal law." *Id.* at 48. This is precisely what the Court held in *Fikes*. 62 F.4th at 716.

   As parties to the settlement agreement, Visa and Mastercard told the Court that the class definition was defined by direct purchaser standing. Having offered

their interpretation to this Court, and the *Fikes* court having accepted it, Defendants cannot reverse their position and seek to enforce a different settlement that is untethered to direct purchaser standing under federal law.

Counsel for the class were in full agreement with Defendants' position in *Fikes*. Their brief (Case No. 20-339 ECF No. 329 at p. 44) supports the District Court's then-holding that the class definition was "objectively guided by federal antitrust standards." *See Fikes*, 62 F.4th at 716. Class Counsel asserted that "[i]f a Branded Operator that is not a member of the class is an 'indirect purchaser,' it may seek redress" under state laws that allow indirect purchaser antitrust claims. *Id*. at 40.

Even crediting Defendants' new position that the issue of standing may be waived and a class action settlement treated as a purely private contract, they may not run from their own interpretation. When this Court affirmed the District Court's certification of the Rule 23(b) Settlement Class, both sides to the contract stated their intent on the record as to how class membership was determined. As they both explained, "accepts" was read through the lens of federal antitrust standing – not only as between merchants who have a contractual dispute about ownership of the claim, but as a broad matter of law, they said. The meaning of the contract is fixed by their own forcefully stated intent; they may not change it now.

### E. The Acquiring Banks, Which Perform Only Mechanical Services for Merchants, Are Not Direct Purchasers of Card Transaction Services

Visa and Mastercard persist in arguing on appeal that Square itself is *not* a direct purchaser and thus lacks antitrust standing. Defs. Br. at 19-20. Instead, they argue, acquiring banks are the direct payors of the interchange fees. *Id*. This argument proves too much: if it were true, the settlement approved by this Court in *Fikes* would be fatally defective. Fortunately, Defendants' argument fails.

Moreover, Visa and Mastercard in no way explain how direct purchaser standing skips over Square to the Square Sellers, who are undeniably farther down the line from Visa and Mastercard. Apart from the illogic of their skip-over standing argument, Visa and Mastercard misconstrue *Illinois Brick* standing and ignore the alleged wrongdoing to make it. Their argument also fundamentally misconstrues and overstates the role of acquiring banks in the sale of card payment transaction services.

The acquiring banks perform mechanical services in the purchase and sale of payment card services. They do not purchase card transaction services. They merely transmit information to the card network and collect funds from the issuing banks for their customers – the merchants who actually purchase the card services – and remit those funds to the merchants after deducting the interchange fees the merchants pay for those services. *Fikes*, 62 F.4th at 713. The acquiring banks perform the same

15

mechanical services that credit card issuers and banks perform in *Apple Inc. v. Pepper*, 587 U.S. 273 (2019). When an iPhone customer buys an app, he uses his credit or debit card (or PayPal or another intermediary) to move money from his bank to Apple – the same mechanical service the acquiring banks perform here. But the Supreme Court held that Apple's *customers* – not the banks or intermediaries – are direct purchasers of apps with direct purchaser standing to sue Apple. *Id.* at 280.

Virtually every transaction involves a bank; comparatively few goods or services are purchased with cash. If Visa's and Mastercard's argument were correct, only banks could ever have direct purchaser antitrust standing. That is not what direct purchaser standing means and is not how the Supreme Court – or any other court – applies *Illinois Brick*. Their argument that the acquiring banks were direct payors of the disputed interchange fees – meaning that no member of the settlement class could be a direct purchaser – is legally unsustainable.

### F. Published Notice Did Not Satisfy the Due Process Requirement Of Direct Notice to All Settlement Class Members

#### 1. Black Letter Law Requires Direct Notice

It is undisputed that the settling parties – all represented by highly skilled counsel with extensive class action experience – did not provide direct notice of the proposed settlement to the Square Sellers. And it is undisputed that, despite having contact information for the Square Sellers, the claims administrator – one of the world's largest and most experienced class action administrators – did not send the

detailed settlement notice to the Square Sellers. Given the size and complexity of the settlement, the failure could have been no accident or oversight. Notice was not sent to the Square Sellers because no one considered them to be settlement class members when the notice was sent. Defendants' contrary argument is a mere afterthought.

"Rule 23 requires that individual notice be directed to all class members whose names and addresses can be ascertained with a reasonable effort." 3 H. Newberg & W. Rubinstein, *Newberg & Rubenstein on Class Action*s § 8:8 (6th ed. Nov. 2024) (quoting Fed. R. Civ. P. Rule 23(c)(2)(B)); *see*, *e.g*., 7AA C. Wright & A. Miller, *Federal Practice and Procedure* § 1786 (3d ed. June 2024) ("[n]otice is crucial to the entire scheme of Rule 23(b)(3) … [w]ithout the notice requirement it would be constitutionally impermissible to give the judgment binding effect against the absent class members.").

In *Eisen*, the Supreme Court held that individual notice must be directed to any member of the class that could be identified, regardless of the burden placed on the representative. 417 U.S. at 176 (affirming 2d Circuit). "There is nothing in Rule 23 to suggest that the notice requirement can be tailored to fit the pocketbooks of particular plaintiffs." *Id. Eisen* makes it clear that reasonableness does not factor into a decision about whether *identified* class members must receive individual notice. The Supreme Court directed the plaintiffs to mail individual notice to more than two million class members even though the cost of mailing the notice was prohibitively

17

expensive. *Id.* ("individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case"). Thus, "once class members are identified, reasonableness falls out of the equation; those class members simply must receive individual notice." *Larson v. Spring Nextel Corp.*, No. 07-5325 (JLL), 2009 WL 1228443, at *3 (D.N.J. April 30, 2009) (citing *Eisen*).

Four years after *Eisen*, the Supreme Court held that where a defendant has records from which class members may be identified for the purposes of individual direct notice, the Court had the power to compel defendant to make those records available. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978). The precedent that review of a settling defendant's own records for the purpose of giving direct notice to each identifiable class member is required remains undimmed.

Defendants do not cite any authority to support their argument that summary notice is sufficient when the identity of class members is known or can be obtained through reasonable efforts. In *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 125 (3d Cir. 2012), the Third Circuit reversed final approval of a settlement that permitted a circumscribed search of settling defendant's records. There, the Court held that "[t]he source or sources providing the greatest number of names and addresses must be used." *Id.* (quoting *In re Nissan Motor Corp, Antitrust Litig.,* 552 F.2d 1088 (5th Cir. 1977)). *Larson* required a search of the settling defendant's backup tapes, even though it would take months and cost hundreds of thousands of dollars, because the

18

requirement of individual notice is strong and "notice by publication [is] a poor substitute." 687 F.3d at 124 (citing *Eisen*, 417 U.S. at 175).

Here, there is no dispute that Defendants already knew the identities of the Square Sellers, and, in any event, they make no argument that it would have been too expensive to identify them or send notice to them.

It is undisputed that Defendants have records of the identities of every Square Seller; it is a litigation admission. *See* 05-md-1720, ECF No. 9100 (Defs.' Nov. 1, 2023 Memo. of Law in Supp. of Mot. To Enforce) at 21 (it is "wrong" to suggest that Square Sellers "do not exist within Defendants' transactional data" because "[m]erchants serviced by payment facilitators do exist" in the data); *see* ECF No. 9103 (Defs.' Jan. 8, 2024 Reply in Supp. of Mot. to Enforce) at 2 (Defendants have confirmed that claims administrators' data set "include[s] the millions of customers of payment facilitators"); *see also id.* (ECF No. 9103) at 15.

Indeed, years *after* the settlement was approved and *after* this dispute arose, the settlement administrator sent claim forms to millions of Square Sellers. *See* A.7970[2]. Plainly, the administrator had sufficient identifying information for the

---

[2] Because Square was the ███████████████████████████ by the customers of the Square Sellers, the settlement administrator lacked detailed information from which it could pre-populate the claim forms for each Square Seller, as it was able to do for every member of the settlement class. A.7973-74 at ¶¶ 11-12 (conceding the existence of "[c]laimants for whom the Class Administrator is unable to locate accurate Interchange Fees Paid information"); *see* fn.1 thereto (identifying them as "merchant-customers of payment facilitators," like Square). That the

Square Sellers to send the claim forms. But the settlement administrator did *not* send individual notice of the proposed settlement to any of those millions of Square Sellers, as was required to protect their constitutional due process, *before* the settlement was approved and their claims were compromised. Defendants do not deny having sufficient identifying information for the Square Sellers to identify them, nor do they argue that it would have been prohibitively expensive to obtain any additional necessary information to provide individual direct notice – they can each, after all, be reached using information held by their payment facilitators, who are ██████████████████ for their transactions.[3]

Finally, Defendants do not dispute that the Square Sellers did not get individual notice. All the named plaintiffs have so declared. *See* Square Seller Decls. ¶ 13 (e.g., A.5417).

If the Square Sellers were, in fact, members of the Settlement Class, this failure to meet the black letter requirements would result in remand to re-notice the class and offer a new opportunity to object or opt out, under controlling Supreme Court precedent. Fortunately, a much simpler explanation presents itself: the Square settlement administrator lacked sufficient granular detail about the Square Sellers confirms that ████████████████████████████████ ████████████████████████

[3] A.5517-18 (not disputing the factual assertion in Rule 56.1 Statement). *See* A.1357, 1385, 1448, 1860, 3671, 3696, 5406.

20

Sellers were never intended to be in the Settlement Class, and Defendants' (and Settlement Class Counsel's) current position notwithstanding.

### 2. The Settling Parties Never Considered the Square Sellers To Be Class Members

It is inconceivable that counsel for Defendants and the settlement class believed millions of Square Sellers were part of the settlement and simply failed to send direct notice to them. Defendants' protestations notwithstanding, they and counsel for the Rule 23(b)(3) Settlement Class never believed the Square Sellers are part of the class. Rather, because millions of readily-identifiable Square Sellers did not pay any interchange fee and thus did not exist in Defendants' data, they were not sent direct notice. Defendants' effort to subsume the Square Sellers' indirect claims in a direct purchaser settlement is nothing but a post-hoc rewriting of the settlement class in an effort to evade valid claims based on an unrelated release with distinct parties.

### CONCLUSION

For all these additional reasons, the District Court's decision misapplying this Court's decision in *Fikes* and sweeping the Square Sellers into the massive direct purchaser settlement must be reversed and remanded.

Dated:   February 2, 2025

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

By: ___*s/ Mark C. Rifkin*___
    Mark C. Rifkin (MR-0904)
    Thomas H. Burt (TB-7601)
    270 Madison Avenue
    9th Floor
    New York, NY 10016
    (212) 545-4600
    rifkin@whafh.com
    burt@whafh.com

    *Attorneys for Plaintiffs-Appellants*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief was prepared in proportionally spaced 14-point font using Microsoft Word, and according to that software, it contains 5,110 words, not including the cover, the table of contents, the table of citations, and this certificate.

*s/ Mark C. Rifkin*
MARK C. RIFKIN

Baker Botts LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002

*Attorneys for Defendant-Appellee*
*MASTERCARD INCORPORATED*
kgallo@paulweiss.com
btannenbaum@paulweiss.com
gcarney@paulweiss.com
nkovalenko@paulweiss.com
ty.buthod@bakerbotts.com

N. Albert Bacharach, Jr. PA
4128 NW 13th Street
Gainesville, FL  32609
352) 378-9859

*Attorney for Objector-Appellant*
*JACK RABBIT, LLC*
N. Albert Bacharach, Esq.
nab@nabjr.com


Date: February 3, 2026


/ s / *Mark C. Rifkin*
_____

MARK C. RIFKIN, ESQ.
*Attorney for Plaintiffs-Appellants*