# 24-1653(L)

**24-1808(CON)**

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### IN RE PAYMENT CARD INTERCHANGE FEE AND
### MERCHANT DISCOUNT ANTITRUST LITIGATION

### ON APPEAL FROM THE UNITED STATES DISTRICT
### COURT FOR THE EASTERN DISTRICT OF NEW YORK
### No. 05-1720

### REPLY BRIEF
### OF OBJECTOR-APPELLANT JACK RABBIT, LLC

| | |
|---|---|
| **Paul S. Rothstein**<br>**Florida Bar Number: 310123**<br>**Co-counsel for Appellant Jack Rabbit, LLC**<br>**Attorney Paul S. Rothstein, P.A.**<br>**626 NE 1st Street**<br>**Gainesville, FL 32601**<br>**(352) 376-7650**<br>**(352) 374-7133 (Fax)**<br>**E-Mail:**<br>**psr@rothsteinforjustice.com** | **N. Albert Bacharach, Jr.**<br>**Florida Bar Number: 209783**<br>**Co-counsel for Appellant Jack Rabbit, LLC**<br>**N. Albert Bacharach, Jr., P.A.**<br>**4128 NW 13th Street**<br>**Gainesville, FL 32609-1807**<br>**(352) 378-9859**<br>**(352) 338-1858 (Fax)**<br>**E-Mail:**<br>**N.A.Bacharach@att.net** |

## TABLE OF CONTENTS

**TABLE OF CONTENTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **ii**

**TABLE OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . **iii**

**ARGUMENT**

**I. IF ALL ENTITIES OTHER THAN ACQUIRING BANKS ARE INDIRECT PAYERS THAT ARE BARRED FROM SEEKING DAMAGES UNDER FEDERAL ANTITRUST LAW, THEN AT ALL TIMES, GOING BACK TO THE FILING OF THE FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT [D.E 317], NO RULE 23(B)(3) CLASS MEMBER HAS EVER SUFFERED ANTITRUST DAMAGES, AND THIS COURT MUST REMAND WITH DIRECTIONS TO DISMISS CASE 1:05-md-01720, PURSUANT TO RULE 12(B)(1) FED. R. CIV. P.** . . . . . . . . . . . . . . . **5**

**II. ALTERNATIVELY, RULE 23(B)(3) CLASS MEMBERS ARE LIMITED TO ALL PERSONS, BUSINESSES, AND OTHER ENTITIES THAT HAVE ACCEPTED ANY VISA-BRANDED CARDS AND/OR MASTERCARD-BRANDED CARDS IN THE UNITED STATES AT ANY TIME FROM JANUARY 1, 2004 TO THE SETTLEMENT PRELIMINARY APPROVAL DATE, AND SUFFERED ANTITRUST DAMAGES AS A DIRECT PURCHASERS OR COST-PLUS INDIRECT PURCHASERS**. . . . . . . . . . . . . . . . . . . **9**

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

**CERTIFICATE OF COMPLIANCE**. . . . . . . . . . . . . . . . . . . . . . . . **15**

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

ii

## TABLE OF AUTHORITIES

### CASES

*Apple Inc. v. Pepper,* 139 S. Ct. 1514, 203 L. Ed. 2d 802 (2019) . . . . . . 11,13

*Arbaugh v. Y & H Corp.,* 546 U.S. 500 (2006) . . . . . . . . . . . . . . . . . . . . . . . 9

*Capron v. Van Noorden,* 6 U.S. 126, 2 L. Ed. 229 (1804). . . . . . . . . . . . . . 8

*Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867 (1984) . . . . . . 7

*Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546,552 . . . . . . . . . . . . 8

*Fikes Wholesale, Inc. v. Visa U.S.A., Inc.* 62 F.4th 704 (2023) . . . . . . . 6, 10

*Hollingsworth v. Perry,* 570 U.S. 693 (2013) . . . . . . . . . . . . . . . . . . . . . . . 6

*Illinois Brick Co. v. Illinois* 431 U.S. 720, (1977) . . . . . . . . . . . . . . . . . . . . 10

*Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994) . 8

*Kontrick v. Ryan,* 540 U.S. 443, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004). 9

*Lujan v. Defs. of Wildlife,* 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . 6, 7

*Nat'l Football League's Sunday Ticket Antitrust Litig. v. DirecTV, LLC,* 933 F.3d 1136 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ohio v. Am. Express Co.,* 138 S. Ct. 2274, 201 L. Ed. 2d 678 (2018) . . . . . . 11

*Spokeo, Inc. v. Robins,* 578 U.S. 330, 136 S. Ct. 1540 (2016). . . . . . . . . . . . 7

*Transunion LLC v. Ramirez,* 141 S. Ct. 2190 (2021) . . . . . . . . . . . . . . . . . 7, 8

*Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1053 (2016) . . . . . . . . 8

*United States v. Hays,* 515 U.S. 737 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . 6

## UNITED STATES CONSTITUTION

U.S. Const. art. III, § 2 ........................................... 6

## FEDERAL STATUTES AND RULES

Fed. R. App. P. 32(a)(5) ........................................... 16

Fed. R. App. P. 32(a)(7)(b)(ii) ..................................... 15

Fed. R. App. P. 32(f) .............................................. 15

Fed. R. Civ. P. 12(B)(1) ......................................... 5, 9

## ARGUMENT
### I.
**IF ALL ENTITIES OTHER THAN ACQUIRING BANKS ARE INDIRECT PAYERS THAT ARE BARRED FROM SEEKING DAMAGES UNDER FEDERAL ANTITRUST LAW, THEN AT ALL TIMES, GOING BACK TO THE FILING OF THE FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT [D.E 317], NO RULE 23(B)(3) CLASS MEMBER HAS EVER SUFFERED ANTITRUST DAMAGES, AND THIS COURT MUST REMAND WITH DIRECTIONS TO DISMISS CASE 1:05-md-01720, PURSUANT TO RULE 12(B)(1) FED. R. CIV. P.**

Defendants-Appellees Visa Inc. and Mastercard Incorporated ("Visa & Mastercard") argue "Federal antitrust standing law does not support the opposing parties' indirect-payor arguments in any event. **All entities other than acquiring banks are indirect payors that are barred from seeking damages under federal law**. Defendants compromised their indirect-payor defense solely to reach a settlement with the class of millions of merchants against which Defendants had been litigating for years (including Square's and Intuit's merchant customers), but to this day have maintained the defense for all other purposes." (emphasis added) Principal Brief of Defendants-Appellees, No. 24-1653, 24-1808 (2d Cir. Jan. 21, 2025), ECF No. 128.

If it is true that all persons, businesses, and other entities that have accepted payment cards are indirect payors that are barred from seeking damages under federal law, then neither the named plaintiffs, nor anyone in

-5-

the rule 23(b)(3) settlement class, would have Article III standing because they have not suffered antitrust damages.

"The Federal courts are under an independent obligation to examine their own jurisdiction, and 'standing is perhaps the most important of the jurisdictional doctrines.'" *United States v. Hays*, 515 U.S. 737, 742 (1995). Article III limits the subject-matter jurisdiction of the federal courts to Cases and Controversies. U.S. Const. art. III, § 2. Standing "'must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.'" (internal citation omitted) *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013).

In fact, the case-or-controversy requirement renders standing "an essential and unchanging part" of subject-matter jurisdiction and one of the "irreducible" requirements for the exercise of federal judicial authority. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The case-or-controversy requirement for the exercise of federal judicial authority is not extinguished by the fact that a settlement takes place in the context of a class action, or that the settlement is on appeal[1] a second time.

---

[1] This Court, in approving the 2019 settlement, noted that [t]he ascertainability challenge hinges on the interpretation of a single word: "accepted." ... But the district court properly concluded that "**the class definition is . . . objectively guided by federal antitrust standards**." Final Approval, No. 05-md-1720, 2019 WL 6875472, at *31; 9. (emphasis in the original) *Fikes Wholesale, Inc. v. Visa U.S.A., Inc.* 62 F.4th 704, 716 (2023).

At a minimum, to meet the standing requirement of Article III, a plaintiff must satisfy three elements: (1) injury in fact; (2) "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court;" (3) that is likely to be redressed by the requested relief. *Id.* at 560-561.

The issue of whether the unnamed class members have Article III standing is left for the trial or settlement phase of the class action litigation, because once certification of the class takes place all rights and obligations, including standing, attach to all members of the class. *See* Thane Evangelic & Bradley J. Hamburger, *Article III Standing and Absent Class Members*, 64 Emory L.J. 383, 393-94 (2014); *see also Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.").

The Supreme Court has established that all class members must have Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."); *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)

-7-

"Every class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016)) "No concrete harm, no [Article III] standing." *Id.* at 2214.

If neither the named plaintiffs nor anyone in the rule 23(b)(3) settlement class have Article III standing because, as Visa and MasterCard assert, they have not suffered antitrust damages, then there is no federal question. That in turn is problematic because, federal district courts have limited subject matter jurisdiction. "The district courts of the United States, as we have said many times, are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute,'" *Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546,552* citing *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, (1994).

Lack of subject matter jurisdiction cannot be waived. No complaint that is not authorized by both Article III and a federal jurisdictional statute can be properly before a federal court. Since 1804, when John Marshall was Chief Justice of the United States, it has been established that subject matter jurisdiction may be challenged at any time. *Capron v. Van Noorden*,

-8-

6 U.S. 126, 126-27, 2 L. Ed. 229 (1804).

More recently, the Supreme Court has said:

> **The objection that a federal court lacks subject-matter jurisdiction**, see Fed. Rule Civ. Proc. 12(b)(1), **may be raised** by a party, or by a court on its own initiative, **at any stage in the litigation, even after trial and the entry of judgment.** Rule 12(h)(3) instructs: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. *See Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004)."

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). (emphasis added)

If Visa & Mastercard are correct, and no RULE 23(B)(3) class member has ever suffered antitrust damages, then, at all times going back to the filing of the initial MDL class action complaint, the named plaintiffs lacked standing. As a result it is incumbent that this court remand this matter to the district court, with directions to dismiss Case 1:05-md- 01720, pursuant to Rule 12(b)(1) Fed. R. Civ. P.

## II.
**ALTERNATIVELY, RULE 23(B)(3) CLASS MEMBERS ARE LIMITED TO ALL PERSONS, BUSINESSES, AND OTHER ENTITIES THAT HAVE ACCEPTED ANY VISA-BRANDED CARDS AND/OR MASTERCARD-BRANDED CARDS IN THE UNITED STATES AT ANY TIME FROM JANUARY 1, 2004 TO THE SETTLEMENT PRELIMINARY APPROVAL DATE, AND SUFFERED ANTITRUST DAMAGES AS A DIRECT PURCHASERS OR COST-PLUS INDIRECT PURCHASERS**

This Court, in approving the 2019 settlement, noted:

[t]he ascertainability challenge hinges on the interpretation of a single word: "accepted." ... But the district court properly concluded that "**the class definition is . . . objectively guided by federal antitrust standards**." Final Approval, No. 05-md-1720, 2019 WL 6875472, at \*31; 9. (emphasis in the original). . .

   **In view of those standards, the district court accepted Class Counsel's claim that "they represent only . . . the direct purchaser, and not every entity in the payment chain.**" Final Approval, No. 05- 2 md-1720, 2019 WL 6875472, at \*31 (internal quotation marks omitted). Put differently, the district court found that federal antitrust law clarified that the only entities that could fall within the class definition were those deemed to be direct payors of the challenged fees.

*Fikes Wholesale, Inc. v. Visa U.S.A., Inc.* 62 F.4th 704, 716-717 (2023). (emphasis added)

In this antitrust matter, the Article III standing issue is informed by *Illinois Brick* antitrust standing. *Illinois Brick Co. v. Illinois* 431 U.S. 720, (1977). Thus, although any person, business, and other entity ("Merchant") with the proper hardware and software may be able to accept payment cards, only those Merchants who are either Direct Purchasers, or Illinois Brick Cost-plus Direct Purchasers[2], have suffered antitrust damages, and are Rule 23(b)(3) Class members, with Article III standing.

In his explanation of the *Illinois Brick* antitrust standing, Justice

---

[2] The Illinois Brick cost-plus exception to the Direct Purchaser rule refers to a contractual relationship wherein the seller's price for goods or services includes all of the seller's costs plus a percentage, or flat amount, in addition.

Kavanaugh stated in *Apple v. Pepper*:

> In *Illinois Brick*, the Supreme Court incorporated "principles of proximate cause" into an action for violation of the Sherman Act, holding "that indirect purchasers who are two or more steps removed from the violator in a distribution chain may not sue. ... [I]f manufacturer A sells to retailer B, and retailer B sells to consumer C, then C may not sue A. But B may sue A if A is an antitrust violator. **And C may sue B if B is an antitrust violator**. That is the straightforward rule of *Illinois Brick*."

*Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1520-21, 203 L. Ed. 2d 802. (2019) (emphasis added)

Credit card networks "operate what economists call a 'two-sided platform,'" which "offers different products or services to two different groups who both depend on the platform to intermediate between them." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2280, 201 L. Ed. 2d 678 (2018)

Thus, the Visa and MasterCard networks provide Payment Card services to both the Merchants who accept their Payment Cards and consumers who use their Payment Cards to make purchases.

This matter is a variation of when B is an antitrust violator because in this matter the Visa and MasterCard Networks, and the Issuing and Acquiring Banks are all co-conspirator antitrust violators. If the we designate the Issuing Bank as A; the Visa MasterCard network as B; the Acquiring Bank as C; and the Merchant direct purchaser or cost-plus direct purchaser as D; then in the *Apple* model A sells to B, B sells to C, and C sells to D. And,

because A, B, and C are all co-conspirator antitrust violators[3], D the Merchant is the direct purchaser or cost-plus direct purchaser, who has antitrust injury and article III standing.

In a Direct Purchaser payment card transaction there is one financial transaction between the Merchant and the Acquiring Bank (also known as the Merchant Bank), wherein the Acquiring Bank processes a Payment Card purchase for the Merchant and charges the Merchant a fee equaling the sum of the "interchange fee" and the "merchant discount fee" for doing so.

In a Direct Purchaser payment card transaction there are three steps.

1. The transaction begins when a consumer uses a payment card to purchase an item or service from a Merchant.

2. Then the Merchant settles the transaction, i.e. forwards the transaction, to the Merchant's Acquiring Bank.

3. Then the Acquiring Bank facilitates the processing of the transaction[4] and then deposits the net amount of the transaction (the gross

---

[3] In the conspiracy Visa and MasterCard are always B. But in some transactions any particular bank may be either A or C. i.e., sometimes a particular bank will be charging the Interchange Fee, and other times it will be charging the Merchant Discount Fee.

[4] Processing a transaction involves submitting the transaction to the consumers' Issuing Bank through the Visa or MasterCard payment network, and then receiving back through the network the amount of the transaction, less the Issuing Banks' "interchange fee," the Visa or MasterCard "Network Use Fee," and the Acquiring Bank's "Merchant Discount Fee."

amount of the transaction, minus the "interchange fee," the "network use fee," and the "merchant discount fee") into the Merchant's account at the Acquiring Bank.

The Acquiring Bank facilitates the transaction. It does not purchase, or otherwise acquire, the transaction from the merchant, therefore the Acquiring Bank does not pay the "interchange fee" to the issuing bank. However, even if the Acquiring Bank pays the "interchange fee" to the Issuing Bank, because the banks are antitrust co-conspirators with Visa and MasterCard, the Merchant is the first purchaser of the "interchange fee."

As the Ninth Circuit explained:

"[i]f the direct purchaser conspires to fix the price paid by the plaintiffs, then the plaintiffs pay the fixed price directly and are not indirect purchasers (i.e., there is no pass-on theory involved)." *In re ATM Fee Antitrust Litig.*, 686 F.3d at 750. In other words, when co-conspirators have jointly committed the antitrust violation, a plaintiff who is the immediate purchaser from any of the conspirators is directly injured by the violation. *See Pepper*, 139 S. Ct. at 1522.

*Nat'l Football League's Sunday Ticket Antitrust Litig. v. DirecTV, LLC*, 933 F.3d 1136, 1157 (2019).

Thus, in this matter, the Merchant is the Direct Purchaser, or the *Illinois Brick* Cost-plus Direct Purchaser, because they are first person outside of the antitrust conspiracy to pay the "Interchange Fee."

Having established that the Merchant is the Direct Purchaser, or, like

appellant Jack Rabbit, an *Illinois Brick* Cost-Plus Direct Purchaser[5], and that the seller is the Acquiring Bank, it follows that only Merchants that have *accepted* Visa or Mastercard Payment Cards, who also have a Direct Purchaser, or Illinois Brick Cost-Plus Direct Purchaser relationship with an Acquiring Bank are class members.

Conversely, Merchants that have an Indirect Purchaser relationship with an Acquiring Bank are not class members. Therefore, Merchants that use a Payment Facilitator[6] to process Payment Card purchases and have an indirect purchaser relationships with an Acquiring Bank are not class members.

Payment Facilitators, who are the direct purchasers of the services of the Acquiring Banks, assuming they have not opted out, are Rule 23(B)(3) class members.

---

[5] Jack Rabbit, and the other Retail Gas Station franchisees meet the elements necessary to be identified as an Illinois Brick Cost-plus Direct Purchaser. (*See* the declaration of Jack Kidd, (D.E Doc. 8843-1); and the August 6, 2016 contract between Jack Rabbit and Superior Transport (D.E. Doc. 8843-2)

[6] For various economic reasons not relevant to this appeal many small merchants are not able to, or simply do not desire to, establish a direct relationship with an Acquiring Bank. To fill that void Payment Facilitators, also referred to as PayFacs, contract with small businesses, and middlemen the processing of Payment Cards. To this end, the Payment Facilitator opens a bank account with an Acquiring Bank and receives a Master Merchant Identification Number which allows it to acquire and aggregate payments for its customers, known as sub-merchants.

-14-

## CONCLUSION

For all of the foregoing reasons the Memorandum and Order of the district court, which disregards the Direct Purchaser antitrust standing requirements of *Illinois Brick*, should be reversed and this matter should be remanded with instructions to the district court that sub-merchants of Payment Facilitators are not members of the Rule 23(b)(3) settlement class, and only Direct Purchasers or Cost-Plus Direct Purchasers, such as Jack Rabbit, are members of the Rule 23(b)(3) settlement class.

Respectfully submitted,

/s/ *N. Albert Bacharach, Jr.*

N. Albert Bacharach, Jr.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a) Fed.R.App.P

### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(b)(ii) because this brief contains less than 6,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared using the Georgia font, which is a proportional serif typeface.

/s/ *N. Albert Bacharach, Jr.*

N. Albert Bacharach, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2025 I filed the foregoing Reply Brief via the ACMF filing system for the United States Court of Appeals for the Second Circuit, and that as a result each counsel of record received an electronic copy of this Initial Brief on February 3, 2025.

/S/ *N. Albert Bacharach, Jr.*

N. Albert Bacharach, Jr.